**WILENTZ, GOLDMAN & SPITZER P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095
DAVID H. STEIN, ESQ. (DHS-8514)
(732) 636-8000
*Proposed Attorneys for the Debtor*

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE DISTRICT OF NEW JERSEY

------------------------------------------------------X
                                                    :
In re:                                              :
                                                    :   **Case No.: 11-31350**
MID-ATLANTIC MULTI-SPECIALTY            :
SURGICAL GROUP, L.L.C.,                 :   **Chapter 11**
                                                    :
                    Debtor.                         :
                                                    :
------------------------------------------------------X

**AFFIDAVIT OF VANCE J. MOSS, M.D.**
**IN SUPPORT OF FIRST DAY APPLICATIONS**

STATE OF NEW JERSEY )
                                  ) ss.
COUNTY OF MIDDLESEX)

VANCE J. MOSS, M.D., of full age, being duly sworn according to law, upon his oath deposes and states:

1. I am a physician duly licensed under the laws of the State of New Jersey, specializing in urology.

2. My brother and partner, Vincent Moss, M.D. ("Vincent") is a physician duly licensed under the laws of the State of New Jersey, specializing in thoracic surgery.

3. We are both commissioned as Majors in the United States Army Medical Corp. and have served, and continue to serve, as Combat Surgeons. We have completed several tours

of duty in Iraq and Afghanistan, treating wounded soldiers and marines, for which we have received several awards including, but not limited to, the Military Outstanding Volunteer Service Medal, the Army Commendation Medal and the Operation Iraqi Freedom Medal.

4. We are the sole owners of Mid-Atlantic Multi-Specialty Surgical Group, L.L.C., a New Jersey professional service corporation (the "Debtor"). As such, I am familiar with the Debtor's day-to-day operations, business affairs and records, and are authorized to make this Affidavit on the Debtor's behalf.

5. This Affidavit is intended to explain the circumstances precipitating the Debtor's Chapter 11 filing and to provide general information about the Debtor and its business operations which are germane to the First Day Motions, including the transactions by and among each of us individually, the Debtor and Kimball Medical Center ("Kimball"). The factual statements in this Affidavit are based upon my personal knowledge, information supplied to me by others under my supervision, my review of relevant documents and/or my opinions based upon my experience and knowledge of the Debtor's operations and financial conditions.

### Background

**A.    The Chapter 11 Filing**

6. On July 18, 2011 (the "Petition Date"), the Debtor intends to file a voluntary petition for relief under Chapter 11 of Title 11, §§ 101 et seq. of the United States Code (the "Bankruptcy Code") in the United States Bankruptcy Court for the District of New Jersey.

#3393525 (156619.001)

7. The Debtor intends to continue operating its business and to manage its property as a debtor-in-possession pursuant to §§ 1107 and 1108 of the Bankruptcy Code. No creditors' committee or trustee has been appointed in this case.

**B.    The Debtor's Business Operations**

8. On May 23, 2005, I entered into a Physician Recruitment Agreement (the "Recruitment Agreement") with Kimball. Pursuant to the Recruitment Agreement, Kimball agreed to advance a maximum of $365,415 during the first fifteen (15) months of the terms of the agreement (the "Advances"). In consideration for the Advance, I agreed to relocate my medical practice to Kimball's service area.

9. The Advances were to be treated as loans accruing interest from the date of payment to the date of repayment at a rate equal to 6.75%, provided, however, that all or a portion of the Advances could be forgiven if certain conditions set forth in the Recruitment Agreements were met.

10. On May 1, 2006, Kimball and each of us individually entered into an Addendum to the Recruitment Agreement (the "Addendum"). The Addendum assigned the rights and obligations of each of us under the Recruitment Agreement to the Debtor and increased the amount of the Advances to more accurately reflect the actual costs of developing our practices in the Kimball service area.

11. The monetary obligations set forth under the Recruitment Agreements are secured against the Debtor's assets. Attached hereto as hereto as **Exhibit "A"** is a UCC search evidencing the various liens and security interests.

#3393525 (156619.001)

12. In June 2006, Kimball, as sublessor, and the Debtor, as sublessee, entered into a sublease agreement, a true and accurate copy of which is attached hereto as **Exhibit "B"** (the "Sublease"), whereby Kimball subleased an office suite of approximately 2,717 square feet (the "Premises") to the Debtor for its medical practice.

13. The Sublease provided that its term would commence on the date that the Debtor opened its medical practice at the Premises, which occurred in or about June 2007.

14. Under the Recruitment Agreements, Kimball was owed the sum of $1.4 million, which amounts will be forgiven within four (4) years from the date of April 1, 2008. Accordingly, by that time period, Kimball will no longer have a lien, claim or security interest arising under the Recruitment Agreements in the assets of the Debtor. According to our records, Kimball has a secured claim in the approximate amount of $233,000 (the "Pre-Petition Debt") as of the Petition Date, secured by liens on substantially all of the Debtor's assets.

15. The UCC search (Exhibit "A"), also lists the lien of De Lage Landen Financial Services, Inc. relating to purchase money financing of a Cutera XEO laser that is utilized in medical procedures. In addition, the UCC search reveals a lien to JP Morgan Chase Bank, NA relating to a former small business loan which has been satisfied. Attached hereto as hereto as **Exhibit "C"** is a statement issued by JP Morgan Chase Bank, NA evidencing the former account has a zero (-0-) balance.

16. The Debtor's current assets total $116,728.00 in accounts receivable and, based upon management estimates and subject to valuation, $123,815.00 in furniture, supplies, fixtures and equipment.

#3393525 (156619.001)

17. Attached hereto as **Exhibit "D"** is a four (4) week cash flow projection indicating that the Debtor will operate in a positive manner during the Chapter 11 proceedings and will provide Kimball with a replacement lien as "adequate protection" on new accounts receivable generated during the course of these reorganization proceedings.

C. **Events Leading to Debtor' Chapter 11 Filing**

18. Under Section 6 of the Sublease, Debtor was obligated to pay to Kimball Minimum Rent (as defined in the Sublease), together with Additional Rent (as defined in the Sublease), calculated as twenty-seven percent (27%) of Kimball's rent and additional rent obligations under the underlying lease.

19. The Debtor paid the rent due under the Sublease through November 2007 but did not pay any further rent from December 2007 through February 2011. The Debtor paid the rent due under the Sublease for March, April and May, 2011 but has not paid June or July, 2011. Arrears under the sublease exceed $300,000.

20. The Debtor has suffered net losses in the last 5 years, including the fiscal year ending December 31, 2010, during which the Debtor's losses totaled $73,000.00. Prior to commencing the instant Chapter 11 cases, the Debtor determined that, in order to continue as a going concern and return to profitability, it was necessary for them to significantly downsize their operation, reduce overhead expenses and find less expensive office space for their medical practice. In order to carry out that objective, the Debtor has engaged in discussions with many prospective landlords to locate suitable replacement space in the Kimball coverage area. It is anticipated that the Debtor will seek court approval to reject the Sublease and for authority and approval to permit Debtor to enter into a turn-key lease which will provide a substantial

#3393525 (156619.001)

overhead savings for the Debtor, which amounts can be utilized to fund a plan in this reorganization case.

**D.    Relief Requested in First Day Applications**

21. To avoid the potentially disruptive impact the commencement of this Chapter 11 case might have on the Debtor's ability to continue operating, and to facilitate the orderly transition into Chapter 11, the Debtor has requested the Court to consider, on an expedited basis, the following motions filed simultaneously with their Chapter 11 petition (collectively, the "First Day Motions"):

(a)    Motion for an Interim Order (i) authorizing the Debtor to use cash collateral pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001; (ii) providing related relief; and (iii) scheduling a final hearing;

(b)    Motion for an Order: (i) authorizing the Debtor to (a) satisfy, and, to the extent applicable, directing payroll banks to honor, prepetition gross salaries, payroll taxes and related employee benefit obligations to the Debtor's employees and (b) to honor, in their discretion, pre-petition sick, vacation and personal days; and (ii) granting related relief (the "Payroll Motion");

(c)    Motion for an Order authorizing the Debtor to maintain their (i) cash management system; (ii) existing bank accounts; and (iii) continue using their existing business forms;

(d)    Motion for an Order (i) for interim relief pursuant to 11 U.S.C. § 366(b), (ii) authorizing the payment of adequate assurance for post-petition utility services, (iii) fixing final hearing date to determine adequate assurance, and (iv) granting other related relief; and

(e)    Motion for Expedited Consideration of First Day matters;

22. The purposes of the First Day Motions include, among other things, to: (a) insure the Debtor's ability to continue operating in the ordinary course and to ease the

#3393525 (156619.001)

transition into Chapter 11; (b) to minimize disruption of the Debtor's ability to continue providing services to its patients and, thus, preserve those patients' confidence; and (c) maintain and bolster employee morale so as to reduce employee attrition during the Debtor's Chapter 11 proceeding, which would have a detrimental impact on the Debtor's business and on patient services. Each of the First Day Motions is crucial to the Debtor's reorganization efforts and preservation of the Debtor's assets.

23. During its Chapter 11 proceeding, the Debtor intends to continue providing high-quality services to its patients, while at the same time reducing costs by continuing to implement its restructuring plan of returning to profitability by downsizing its operation. The Debtor also intends to use Chapter 11 to reduce liabilities and eliminate contracts and agreements to which the Debtor is a party, but which are burdensome or unnecessary to a successful reorganization.

24. The relief requested in the First Day Motions is necessary to allow the Debtor to stabilize its affairs as it transitions into Chapter 11. Therefore, it is respectfully requested that the Court grant each of the First Day Motions and enter the proposed Orders submitted therewith.

E.   **The Debtor's Need For Emergent Relief**

25. Because Kimball has a lien on substantially all of the Debtor's assets, any cash the Debtor may have on the Petition Date will constitute Kimball's "cash collateral". Absent approval from this Court to use Kimball's cash collateral, the Debtor will not have funds available to operate its business on a day-to-day basis. To that end, the Debtor seeks authority to use cash collateral so that it can pay its employees, pay rent, pay vendors and pay other

#3393525 (156619.001)

obligations incurred in the ordinary course of business. Thus, in order to avoid disruption to its ongoing business operations, it is essential that the Court consider the Debtor's Motion for an Interim Order (i) authorizing the Debtor to use cash collateral pursuant to 11 U.S.C. § 363(c)(2) and Fed. R. Bankr. P. 4001; (ii) providing related relief; and (iii) scheduling a final hearing as expeditiously as possible.

26. As set forth in the Payroll Motion, the Debtor employs approximately 6 people, many of whom who rely on the paychecks they receive from the Debtor to meet their living expenses. If these employees are not paid, or if banks refuse to honor checks issued to the Debtor's employees, the implications could be disastrous for the employees individually, and thereby seriously jeopardize the Debtor's chances for a successful reorganization, as such employees will likely seek alternate employment opportunities.

27. The Debtor's next scheduled pay day will be July 22, 2011, which will cover payroll for the prior weeks' time. Because of the timing of the filing of this Chapter 11 case, certain amounts due to employees for pre-petition services will be owing. The Debtor respectfully requests authority to pay that portion of the payroll due on July 22, 2011 which represents services rendered by the Debtor's employees during the period between the end of the last pay period and the Petition Date.

28. Accordingly, the Debtor respectfully requests that the Court enter the Interim Order to ensure that all banks presented with payroll checks honor those checks, regardless whether the checks were issued pre- or post-petition. No employee receiving a payroll check exceeds the statutory cap contained in Section 507(a)(3) of the Bankruptcy Code.

#3393525 (156619.001)

WHEREFORE, it is respectfully requested that this Honorable Court enter the relief as requested herein.

_____
Vance J. Moss, M.D.

Sworn and subscribed to
before me this 15th day
of July, 2011.

_____
Notary Public
State of New Jersey

CATHERINE IARKOWSKI
A Notary Public Of New Jersey
My Commission Expires 11/18/2011

#3393525 (156619.001)