**WILENTZ, GOLDMAN & SPITZER, P.A.**
90 Woodbridge Center Drive
Suite 900, Box 10
Woodbridge, New Jersey 07095
(732) 636-8000
DAVID H. STEIN, ESQ. (DHS-8514)
*Proposed Attorneys for the Debtor*

------------------------------------------------------X
In re:                                                    :     UNITED STATES BANKRUPTCY
                                                          :     COURT FOR THE DISTRICT OF
                                                          :     NEW JERSEY
MID-ATLANTIC MULTI-SPECIALTY              :
SURGICAL GROUP, L.L.C.,                         :     Case No.: 11-31350
                                                          :
              Debtor.                                  :     Chapter 11
                                                          :
                                                          :
------------------------------------------------------X

### APPLICATION IN SUPPORT OF MOTION FOR AN ORDER AUTHORIZING THE DEBTOR'S INTERIM USE OF CASH COLLATERAL AND SCHEDULING A FINAL HEARING PURSUANT TO 11 U.S. §363(c)(2) AND FED. R. BANKR P. 4001

The Application of Mid-Atlantic Multi-Specialty Surgical Group, L.L.C. (the "Debtor"), by and through its proposed counsel, Wilentz, Goldman & Spitzer, P.A., respectfully represents as follows:

### I. INTRODUCTION AND JURISDICTION

1. This Application is submitted in support of the Debtor's motion for an Order authorizing the Debtor's interim use of the cash collateral of Kimball Medical Center ("Kimball"), and scheduling a final hearing on the Debtor's application for use of cash collateral pursuant to 11 U.S.C. §363(c)(2) and Federal Rule of Bankruptcy Procedure 4001.

2. The Court has jurisdiction over this Motion pursuant to 28 U.S.C. §§ 1334 and 157(b). This is a "core" proceeding pursuant to 28 U.S.C. § 157(b)(2)(A), (M) and (O).

1

#3390557 (999999.498)

3. Venue is proper in this Court pursuant to 28 U.S.C. § 1409(a).

4. Without the use of Kimball's cash collateral, the Debtor will be unable to pay its ordinary and necessary business expenses including, *inter alia*, payroll and related obligations, taxes, rent, utilities, and amounts owed to vendors and suppliers of goods and services.

5. Thus, to preserve the Debtor's business and assets for the benefit of the Debtor's creditors and the estates, the Court should authorize the Debtor to use Kimball's cash collateral and enter the accompanying proposed Interim Cash Collateral Order. Thereafter, the Court should grant final approval for the Debtor's use of cash collateral.

## II. BACKGROUND

6. On July 18, 2011 (the "Petition Date"), the Debtor filed a voluntary petition for relief pursuant to Chapter 11, Title 11 of the United States Code (the "Bankruptcy Code"). Since the Petition Date, the Debtor has remained in possession of its assets and continues to manage its business as a debtor-in-possession pursuant to Sections 1107 and 1108 of the Bankruptcy Code. As of the date hereof, the U.S. Trustee has not appointed an Official Committee of Unsecured Creditors.

7. A detailed description of the Debtor's business and the facts precipitating the filing of the Debtor's Chapter 11 proceedings is set forth in the Affidavit of Vance Moss, M.D. submitted in support of the Debtor's various "First Day Motions" (the "Moss Affidavit"). Those facts are incorporated herein by reference.

#3390557 (999999.498)

### A.  The Debtor's Pre-Petition Relationship With Kimball

8.  On May 23, 2005, Dr. Vance Moss, M.D. ("Vance") entered into a Physician Recruitment Agreement (the "Recruitment Agreement") with Kimball. Pursuant to the Recruitment Agreement, Kimball agreed to advance a maximum of $365,415 during the first fifteen (15) months of the terms of the agreement (the "Advances"). In consideration for the Advance, Vance agreed to relocate his medical practice to Kimball's service area.

9.  The Advances were to be treated as loans accruing interest from the date of payment to the date of repayment at a rate equal to 6.75%, provided, however, that all or a portion of the Advances could be forgiven if certain conditions set forth in the Recruitment Agreements were met.

10. On May 1, 2006, Kimball entered into an Addendum to the Recruitment Agreement (the "Addendum") with Vance and Dr. Vince Moss, M.D. (the "Doctors"). The Addendum assigned the rights and obligations of each Doctor under his respective Recruitment Agreement to the Debtor and increased the amount of the Advances to more accurately reflect the actual costs of developing the Doctors' practices in the Kimball service area.

11. The monetary obligations set forth under the Recruitment Agreement are secured against the Debtor's assets.

12. In June 2006, Kimball, as sublessor, and the Debtor, as sublessee, entered into a sublease agreement (the "Sublease"), whereby Kimball subleased an office suite of approximately 2,717 square feet (the "Premises") to the Debtor for its medical practice.

13. The Sublease provided that its term would commence on the date that the Debtor opened its medical practice at the Premises, which occurred in or about June 2007.

14. Under the Recruitment Agreement, Kimball was owed the sum of $1.4 million, which amounts will be forgiven within four (4) years from the date of April 1, 2008. Accordingly, by that time period, Kimball will no longer have a lien, claim or security interest arising under the Recruitment Agreements in the assets of the Debtor. According to Debtor's records, Kimball has a secured claim in the approximate amount of $233,000 (the "Pre-Petition Debt") as of the Petition Date, secured by liens on substantially all of the Debtor's assets.

15. The UCC search (Attached as Exhibit "A" to the Moss Affidavit), also lists the liens of DeLage Landen Financial Services, Inc. relating to purchase money financing of a Cutera XEO laser that is utilized in medical procedures. In addition, the UCC search reveals a lien to JP Morgan Chase Bank, NA relating to a former small business loan which has been satisfied. The JP Morgan Chase Bank, NA line of credit is a former account and has a zero (0) balance.

16. The Debtor's current assets total $116,728.00 in accounts receivable and an estimated $123,815.00 in furniture, supplies, fixtures and equipment.

17. The four (4) week cash flow projection prepared by the Debtor indicates that the Debtor will operate in a positive manner during the chapter 11 proceedings and will provide Kimball with a replacement lien as "adequate protection" on new accounts receivable generated during the course of these reorganization proceedings.

### III. RELIEF REQUESTED AND BASIS THEREFORE

11. A Chapter 11 debtor-in-possession has the statutory right to use cash collateral to operate its business. The standards governing a debtor's use of cash collateral are set forth in Section 363(c)(2) of the Bankruptcy Code. That statute provides:

#3390557 (999999.498)

> The trustee [or debtor-in-possession] may not use, sell or lease cash collateral under paragraph 1 of this subsection, unless -
>
> (A) each entity that has an interest in such cash collateral consents; or
>
> (B) the court, after notice and a hearing, authorizes such use, sale or' lease in accordance with the provisions of this section.

11 U.S.C. §363(c)(2).

12.  The "provisions of this section" referenced in Section 363(c)(2) include Section 363(e), which provides:

> Notwithstanding any other provision of this section, at any time, on request of an entity that has an interest in property used, sold, or leased, or proposed to be used, sold or leased, by the trustee, the court, with or without a hearing, shall prohibit or condition such use, sale or lease as is necessary to provide adequate protection of such interest.

11 U.S.C. §363(e).

A.  **Adequate Protection Through a Replacement Lien**

13.  Although adequate protection can take many forms, three such forms are identified in 11 U.S.C. §361. Section 361 of the Bankruptcy Code provides that one form of adequate protection is providing the secured creditor with a replacement lien, to the extent that the use of cash collateral results in a decrease in the value of the creditor's interest in its collateral. Courts have utilized this provision of Section 361 in fashioning adequate protection and permitting a debtor to use cash collateral under circumstances similar to the within matter. See, e.g., In re Pritchard Plaza Associates Limited Partnership, 84 B.R. 289, 302 (Bankr. D.. Mass 1988) ("If the proceeds stream is likely to remain stable through the collection of new accounts receivable or the sale of new inventory, adequate protection is often ensured by a replacement lien on post-petition accounts and inventory and their, proceeds and by some

#3390557 (999999.498)

provision for monitoring the use of proceeds."); In re Airport Inn Associates. Ltd., 132 B.R. 951, 969 (Bankr. D. Col. 1990) ("The Court could order a lien in post-petition accounts receivable as adequate protection if that relief was requested. . ."); and In re International Design and Display Grow, Inc., 154 B.R. 362, 364 (Bankr. S.D. Fla. 1993) (the court authorized debtor to use cash collateral and, as adequate protection, granted the secured creditor, a replacement lien on all post-petition accounts receivable, inventory and contracts to the extent the creditor's collateral was depleted).

14. As adequate protection, the Debtor proposes to grant Kimball a replacement lien on its post-petition accounts receivable, and allow Kimball a superpriority administrative claim to the extent that the Debtor's use of Kimball's cash collateral results in a diminution of value of the Collateral. The Debtor's 30-day forecast demonstrates that a replacement lien will more than protect Kimball's secured claim.

15. Accordingly, because the granting of a replacement lien in the post-petition accounts receivable and inventory of the Debtor will ensure that the value of Kimball's Collateral will not diminish, the Debtor respectfully submits that Kimball will be adequately protected.

16. In view of the replacement lien, Kimball is adequately protected pursuant to Section 361 and the Debtor should accordingly be authorized to use Kimball's cash collateral pursuant to Section 363(c)(2)(B).

17. Based on the foregoing, the Debtor respectfully submits that entry of an Order authorizing the interim use of cash collateral and scheduling a final hearing to approve the use of cash collateral is necessary and appropriate.

## IV. NOTICE

18. The Debtor seeks the requested interim relief and proposes to serve the Debtor's twenty (20) largest creditors, the Office of the United States Trustee and the Debtor's pre-petition secured creditors and their counsel. The Debtor respectfully submits that such service will constitute good and sufficient notice.

WHEREFORE, the Debtor respectfully requests entry of the accompanying Order: (i) authorizing the Debtor's interim use of cash collateral as described above and scheduling a final hearing for the Debtor's motion for further use. of cash collateral; and (ii) granting such other and further relief as the Court deems just and proper.

**WILENTZ, GOLDMAN & SPITZER P.A.**
*Proposed Attorneys for the Debtor*

By: /s/ David H. Stein
_____
David S. Stein, Esq.

Dated: July 18, 2011

#3390557 (999999.498)